Richard BLAKELY and Carol
Blakely, Respondents,

v.

Dean BLAKELY and Shelly
Blakely, Appellants.

No. SC 83307.

Supreme Court of Missouri,
En Banc.

June 25, 2002.

As Modified on Denial of Rehearing
Aug. 27, 2002.

James D. Boggs, Kansas City, for Appellants.

Richard Blakely, Carol Blakely, pro se.

Jeremiah W. (Jay) Nixon, Atty. Gen., James R. Layton, State Solicitor, Jefferson City, for Amicus Curiae.

LAURA DENVIR STITH, Judge.

Dean and Shelly Blakely (Parents) refuse to permit Dean's parents, Richard and Carol Blakely (Grandparents), to visit with their grandchildren. The circuit court entered a judgment granting Grandparents two hours of visitation every 90 days, pursuant to section 452.402, RSMo 2000. Parents appeal, alleging that to the extent that section 452.402, on its face and as applied in this Court's decision in *Herndon v. Tuhey,* 857 S.W.2d 203 (1993), permits a court to interfere with a fit parent's decision not to allow a child to visit with the child's grandparents, the statute violates their constitutional right to raise their children free from unnecessary state interference as recognized in *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Because section 452.402 as interpreted in *Herndon* is constitutional under the standards set out in *Troxel,* the Court affirms the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 24, 2000, Grandparents filed a petition under Missouri's grandparent visitation rights statute, section 452.402. They alleged that Dean is their natural son and that he and his wife Shelly had unreasonably denied them visitation with their four grandchildren for the preceding year, that mediation had been unsuccessful and that parents continued "to refuse any communication or physical contact between [Grandparents] and their grandchildren in an attempt to alienate said grandchildren from [Grandparents]." They further asserted that visitation was in the children's best interests and "would in no way endanger the children's physical health or impair their emotional development."

Grandparents testified that they had previously been permitted to visit with their grandchildren without harmful effect and that they visited with and were close to their other grandchildren. Grandfather thought that the main problem was that Dean was unhappy with him for a variety of reasons, including Grandparents allegedly being rude to Shelly's parents; not stating "I love you" to Dean when he was growing up; not going to a Promise Keep-

ers meeting with a neighbor; and not attending the River of Life church that Dean, Shelly and Shelly's parents attend.

Grandfather has tried to resolve his and Dean's differences by inviting Shelly's parents to dinner and working out matters with them, by becoming more expressive in telling his other grandchildren he loves them, and by going to family counseling with Dean, Shelly and Dean's sister Debbie, but Dean stopped the counseling after a few sessions, saying he just preferred to do so.

Grandparents testified that, while they do not attend Dean's church, they are Christians and do attend a church that is basically Methodist in philosophy, the same church in which they had brought up Dean. They have not talked with the grandchildren about religion and promised not to do so, saying that they did not want to interfere with Dean and his family's religion, as that is none of their business. Grandparents also sought court-ordered mediation, but withdrew the request when they understood Dean to say that unless they did so, he and Shelly would not let them see the children. But, when they withdrew the mediation request, Parents still denied visitation. Grandparents thus continued with their suit, requesting extensive visitation.

Parents opposed the petition, alleging that they denied Grandparents visitation because they believed that Grandparents were improper moral teachers and poor examples. Specifically, although in earlier years Dean had praised his father for being a good dad and setting a good example, as Dean became older and more religious, his view changed and he opposed any amount of visitation between children and Grandparents. While Dean was raised in Grandparents' church and Grandparents were still Christian, he did not feel that they publicly lived their Christianity as

they should, but that they instead made it a private matter. Dean does permit Shelly's parents to visit with the children; Shelly's parents are lifelong members of Dean's church. Moreover, Dean felt his parents were divisive, critical of his wife, bigoted, and liars and such conduct was contrary to the principles and beliefs his church taught. Dean blamed the failure of counseling and mediation on his parents. As the "religious and moral instruction and training of [their] children" is of "the highest importance in their life," he therefore felt his parents should not visit his children until they repented and became more proper Christian examples.

Dean's sister Debbie, an attorney, testified that Parents are not bigoted, that Dean also refuses to talk with her or respond to her attempts to communicate with him and his wife, and that Grandparents have a good relationship with their other grandchildren.

On November 16, 2000, after considering the evidence before it, the court entered its judgment refusing the extensive visitation Grandparents requested, but granting limited visitation pursuant to the requirements of section 452.402, which states:

1. The court may grant reasonable visitation rights to the grandparents of the child and issue any necessary orders to enforce the decree. The court may grant grandparents visitation when:

. . . .

(3) A grandparent is unreasonably denied visitation with the child for a period exceeding ninety days;

. . . .

2. The court shall determine if the visitation by the grandparent would be in the child's best interest or if it would endanger the child's physical health or impair the child's emotional development. Visitation may only be ordered

when the court finds such visitation to be in the best interests of the child. The court may order reasonable conditions or restrictions on grandparent visitation. . . .

Sec. 452.402.1(3).[1] The statute also permits visitation on similar terms if the parents have filed for dissolution, one parent is deceased and the surviving parent denies reasonable visitation, or the child is adopted by a stepparent, another grandparent or other blood relative. Secs. 452.402.1(1), (2), (4). In these instances, it provides for appointment of a guardian ad litem and a home study, if appropriate. Secs. 452.402.3–.4.

In accordance with these statutory requirements and Grandparents' request for factual findings on the statutory factors and constitutional claims, the trial court specifically found Parents had denied visitation for more than 90 days, the denial was unreasonable, and it was in grandchildren's best interests that Grandparents be awarded reasonable visitation. It rejected Parents' constitutional objections. Balancing the parties' interests, and apparently mindful of prior case law interpreting the statute, it granted Grandparents "two hours of visitation with the minor children on the third Sunday of the months of February, May, August and November of each year," that is, two hours of visitation every 90 days, including travel time. Parents were permitted to be present during the visits, which would not occur at Grandparents' house, and Grandparents were to work out the location and time a week in advance, making sure that the visits were not scheduled during church services. One visit had occurred by the time of oral argument, when the children sat silently between Parents on one side of a table at McDonald's while Grandparents sat across from them for two hours and tried to visit.

## II. STANDARD OF REVIEW

■■■ Parents appeal, claiming the order violates their constitutional rights as parents and their religious beliefs. The reviewing court will affirm the decision below unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Lueckenotte v. Lueckenotte*, 34 S.W.3d 387, 393 (Mo. banc 2001); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Statutory interpretation is an issue of law that this Court reviews *de novo*. *Delta Air Lines, Inc. v. Dir. of Revenue*, 908 S.W.2d 353, 355 (Mo. banc 1995).

■■■ Here, Parents allege that Missouri's grandparent visitation statute is unconstitutional because it permits a court to order visitation even when objection to visitation is raised by a fit parent. Missouri courts start with the presumption that the statute is constitutional. *Suffian*

---

1. Since the briefing and argument of this case, Missouri's legislature passed and the Governor approved and amended section 452.402.1 to provide that, while a court may grant grandparent visitation if such visitation has been unreasonably denied for more than 90 days, "if the natural parents are legally married to each other and are living together with the child, a grandparent may not file for visitation pursuant to this subdivision." SB No. 923 (2002), Sec. 452.402.1. Section 454.402.2 was also amended to provide, "However, when the parents of the child are legally married to each other and are living together with the child, it shall be a rebuttable presumption that such parents know what is in the best interest of the child." SB No. 923 (2002), Sec. 452.402.2.

This Court need not speculate as to whether, when this revision becomes effective, it will apply to Parents and Grandparents. The order in the instant case was entered under the version of the statute in effect in 2000, and that is the statute applicable on this appeal.

*v. Usher*, 19 S.W.3d 130, 134 (Mo. banc 2000). It "will not be invalidated unless it 'clearly and undoubtedly' violates some constitutional provision and 'palpably affronts fundamental law embodied in the constitution.'" *Bd. of Educ. of City of St. Louis v. State*, 47 S.W.3d 366, 368–69 (Mo. banc 2001), *quoting, Linton v. Missouri Veterinary Medical Bd.*, 988 S.W.2d 513, 515 (Mo. banc 1999). Accordingly, "[w]here feasible to do so, the statute will be interpreted to be consistent with the constitution with all doubts to be resolved in favor of validity." *Silcox v. Silcox*, 6 S.W.3d 899, 903 (Mo. banc 1999). Here, Parents, as the party bringing the challenge, bear the burden to prove the statute is unconstitutional. *Id.; Linton*, 988 S.W.2d at 515.

## III. CONSTITUTIONALITY OF GRANDPARENT VISITATION STATUTE

■ Parents acknowledge that *Herndon* upheld section 452.402 as constitutional and approved an order that, like the one issued below, permitted the grandparents in that case to visit with their grandchildren every 90 days. In so doing, *Herndon* noted that the extent of the infringement is an essential consideration in determining whether a right has been unconstitutionally impinged. 857 S.W.2d at 208. *Herndon* determined that Missouri's statute, unlike most of the statutes in the cases relied on by parents therein, permits only a very limited infringement of the parent-child relationship, stating:

> Even a casual comparison of the visitation rights contemplated for grandparents under section 452.402 (and particularly with regard to the limited rights we approve hereinafter) with the magnitude of the infringement in the cases relied upon by the [parents] demon-

strates that no constitutional violation is present in subsections 452.402.1(3) or 452.402.2. The case precedent relied on by the [parents] encompass complete and permanent termination of parental rights ([*Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)] and [*Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)]), decisions concerning what schools children are to attend ([*Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972)] and [*Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925)]), prohibition on teaching certain foreign languages in any schools, public or private, to children who had not yet completed the eighth grade ([*Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)]), and complete housing occupancy prohibitions based on an unacceptably narrow definition of family ([*Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977)]).

*Id.* at 209. It went on to explain that unlike those significant infringements:

> [V]isitation rights by grandparents as defined by subsections 452.402.1(3) and 452.402.2 *are less than substantial encroachment* on a family. Subsections 452.402.1(3) and 452.402.2 contemplate *occasional, temporary visitation*, which may only be allowed if a trial court finds visitation to be in the best interest of the child and does not endanger the child's physical or emotional development. Moreover, the grandparents are members of the extended family whom society has traditionally recognized as playing an important role in the raising of their grandchildren.

*Id.* (emphasis added). To the extent that Parents herein continue to rely on the

cases distinguished in *Herndon*,[2] the Court rejects their argument for the reasons stated in that case. But, this case does present this Court's first opportunity to address Parents' additional argument that the reasoning in *Herndon* and subsequent Missouri cases following it[3] is inconsistent with the United States Supreme Court's decision in *Troxel*.

In *Troxel*, after the children's unmarried parents separated, the father continued to permit the paternal grandparents weekend visitation until his death. At that point, mother notified the grandparents that she would permit them to have one short visit per month with their grandchildren. *Troxel*, 530 U.S. at 60–61, 120 S.Ct. 2054. Grandparents sought and received more extensive visitation under a Washington statute providing:

> *Any person* may petition the court for visitation rights at *any time* including, but not limited to, custody proceedings. The *court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances*.

Wash. Rev.Code, sec. 26.10.160(3) (emphasis added). Mother appealed.

Examining the Washington statute, the United States Supreme Court found it "breathtakingly broad." *Id.* at 67, 120 S.Ct. 2054. The Court identified a variety of factors that led it to find that the statute, "as applied, exceeded the bounds of the due process clause." 530 U.S. at 68, 120 S.Ct. 2054. Most basically, the statute did not base the visitation decision on any special factors that would justify interference with the relationship of a fit parent with his or her child. Rather, it said, the statute's permissive language that "any person" at "any time" could be granted visitation "effectively permits any third party seeking visitation to subject any decision by a parent concerning visitation of the parent's children to state-court review." *Id.* at 67, 120 S.Ct. 2054.

Second, the Court found problematic the statute's failure to accord any deference to the parent's decision that visitation would not be in the child's best interest and that it contained "no requirement that a court accord the parent's decision any presumption of validity or any weight whatsoever." *Id.* This meant that:

> [I]n practical effect, in the State of Washington a court can disregard and overturn *any* decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests.

*Id.* Additionally, *Troxel* noted:

> The Troxels did not allege, and no court has found, that [mother] was an

---

**2.** *See, e.g., Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Pierce v. Society of Sisters*, 268 U.S. 510, 534–35, 45 S.Ct. 571 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). Parents also cite to *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944), *Parham v. J.R.*, 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979), *M.L.B. v. S.L.J.*, 519 U.S. 102, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996), and *Harfst v. Hoegen*, 349 Mo. 808, 163 S.W.2d 609, 613 (1941). *Prince* upheld certain child labor laws. *Parham* involved the right of parents to commit their children to state mental hospitals without a prior due process hearing. *M.L.B.* involved an indigent parent's right to a transcript at state expense. *Harfst* forbade a school district from segregating Catholic children into a separate school, holding this violated constitutional principles on religious freedom.

**3.** *See, e.g.,* cases cited *infra*, note 4.

unfit parent. That aspect of the case is important, for there is a presumption that fit parents act in the best interests of their children....

. . . .

The judge's comments suggest that he presumed the grandparents' request should be granted unless the children would be 'impacted adversely.' In effect, the judge placed on [mother], the fit custodial parent, the burden of *disproving* that visitation would be in the best interest of her daughters....

The decisional framework employed by the Superior Court contravened the traditional presumption that a fit parent will act in the best interest of his or her child.

*Id.* at 68–69, 120 S.Ct. 2054. Accordingly, the Court concluded that "if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination." *Id.* at 71, 120 S.Ct. 2054.

Finally, the mother in *Troxel* had not totally denied the grandparents any visits with their grandchildren, but rather had offered to permit them to visit together on a limited basis each month. *Id.* at 71, 120 S.Ct. 2054. The trial court in *Troxel* ignored this flexibility by the mother and in effect supplanted the mother's decision as to her child's best interests with the court's own opinion as to how much visitation was appropriate. For all of these reasons, the Supreme Court found the Washington statute was unconstitutional as applied by the Washington courts. *Id.* at 73, 120 S.Ct. 2054.

Parents contend that *Troxel* controls the decision here because *Troxel* requires courts to find unconstitutional on its face any statute granting grandparents visitation in the absence of a finding that the lack of such visitation will cause the child

harm. We disagree. While the Supreme Court found the Washington statute unconstitutional *as applied,* it declined the invitation to address whether the statute would have been unconstitutional had it been more narrowly interpreted by the Washington Supreme Court, *Id.* at 67, 120 S.Ct. 2054, and specifically declined to address the mother's claim that all grandparent visitation statutes are unconstitutional unless they require a showing of harm as a condition precedent to visitation. *Id.* at 73, 120 S.Ct. 2054.

Instead, the Supreme Court held that the constitutionality of any standard for awarding visitation should turn on the specific manner in which that standard was applied, stating that "the constitutional protections in this area are best 'elaborated with care.' ... Because much state-court adjudication in this context occurs on a case-by-case basis, we would be hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a *per se* matter." *Id.*

Parents further argue that, even if a grandparent visitation statute can be constitutional, section 452.402 is "virtually identical" to and suffers from the same flaws as the statute rejected in *Troxel* and, thus, is unconstitutional even under a "case-by-case" approach when applied to fit parents such as the Blakelys. Again, this Court disagrees.

Contrary to the Parents' argument, for the many reasons set out earlier, the provisions of the Missouri statute are fundamentally different from those of the statute disapproved in *Troxel.* Moreover, in *Herndon* this Court did exactly what the Washington Supreme Court declined to do in *Troxel*—"give [the nonparental visitation statute] a narrower reading ...". *Troxel,* 530 U.S. at 67, 120 S.Ct. 2054. *Herndon* held that the statute contem-

plates only *"occasional, temporary visitation,* which may only be allowed if a trial court finds visitation to be in the best interest of the child and does not endanger the child's physical or emotional development." 857 S.W.2d at 209 (emphasis added). Similarly, *Herndon* ruled that the statute permitted only a *"minimal intrusion* on the family relationship and ... [was] ... *narrowly tailored* to adequately protect the interests of parents and children." *Id.* at 210 (emphasis added). It emphasized that "if the statute allowed a great amount of visitation we would be more likely to find an undue burden on the family and hold that these subsections are unconstitutional." *Id.* at 210–11.

We here reaffirm the narrow interpretation of Missouri's statute adopted in *Herndon* and other Missouri cases following it,[4] and hold that, as so interpreted, it comports with the standards set out in *Troxel.* Missouri's statute avoids the sweeping breadth of the Washington statute in many ways. First, in contrast to Washington, which allowed visitation to *any* noncustodial person, Missouri limits visitation to "the grandparents of the child ...". Sec. 452.402.1. Consequently, the statute "does not create the potential of subjecting parents' every decision to review at the behest of endless third parties." *In re G.P.C.,* 28 S.W.3d 357, 364 (Mo.App. E.D.2000).

In addition, unlike Washington, Missouri's legislature has balanced the interests involved and provided that to be entitled to visitation, grandparents must meet the threshold requirement of demonstrating that parents have "unreasonably denied" visitation for a period exceeding 90 days. Sec. 452.402.1(3). The fact that no visitation can be ordered unless the parents have entirely denied visitation for a period of 90 days provides the second important distinction between the two statutes. This Court has previously noted that the 90–day period of "unreasonable denial of visitation that must elapse before a court may enter an order under section 452.402 indicates the legislature contemplated an allowance of minimal visitation subject to reasonable restrictions and conditions as a court might find appropriate." *Herndon,* 857 S.W.2d at 210. Thus, unlike in *Troxel,* a grandparent does not have automatic standing to seek visitation:

> [T]he initial ninety day denial of visitation requirement makes [section]

4. Missouri courts have consistently applied and interpreted sections 452.402.1(3) and 452.402.2 carefully and narrowly so as to avoid the pitfalls associated with giving such a statute a "literal and expansive interpretation," as was done by the Washington Supreme Court. *See Troxel,* 530 U.S. at 75, 120 S.Ct. 2054. For instance, Missouri courts have construed the statute narrowly to disallow orders in the nature of "custody," *Barry v. Barrale,* 598 S.W.2d 574, 581 (Mo.App. W.D.1980), to exclude persons other than the parents of a child's father or mother from the scope of the statute, such as step-grandparents, *Hampton v. Hampton,* 17 S.W.3d 599, 602 (Mo.App. W.D.2000), and to acknowledge that the interests of a noncustodial parent far exceed the interests of a grandparent. *Komosa v. Komosa,* 939 S.W.2d 479, 483 (Mo.App. E.D.1997).

Missouri courts have also carefully scrutinized the orders themselves. *See, e.g., Herndon,* 857 S.W.2d at 206, 210 (excessive visitation awarded where it was in the amount often given parents); *In re G.P.C.,* 28 S.W.3d 357, 364 (Mo.App. E.D.2000) (order allowing two hours of supervised visitation every three months fell within standard of minimal visitation subject to reasonable restrictions); *Hampton,* 17 S.W.3d at 605 (order permitting maternal grandparents in dissolution to visit child every other weekend from 6 p.m. on Friday to 6 p.m. on Sunday exceeded a minimal intrusion on family relationship and was unconstitutional application of statute); *Komosa,* 939 S.W.2d at 483 (grandparent's proposed visitation schedule was "totally inappropriate" and visitation, if in child's best interest at all, should not have been granted more frequently than once every 90 days and in area of child's residence).

452.402.1(3) constitutional because it guarantees that a court will not intrude upon the family for less than an egregious denial of visitation. The statute sets ninety days as the limit of permissible visitation denial after which point a court may intervene. It is therefore a type of "jurisdictional" waiting period, after ninety days without visitation an aggrieved party may gain access to the courts.

*Ray v. Hannon*, 14 S.W.3d 270, 273–74 (Mo.App. W.D.2000).

By contrast, the Washington statute at issue in *Troxel* did not require any minimum period of no visitation, and in *Troxel* the mother had offered to allow limited monthly visitation before suit was even filed, but the grandparents rebuffed the offer. The Troxels would not have been able to meet a basic condition precedent to a visitation order in Missouri—a showing of a total denial of visitation for at least 90 days.

Third, even if visitation has been denied for at least 90 days—in this case, it was denied for a full year prior to the filing of the petition—section 452.402.1(3) provides that grandparents bear the burden of proving that this denial of visitation was "unreasonable." *Troxel* criticized the Washington statute for its failure to impose such a requirement, noting that, unlike Washington, many other jurisdictions' statutes provided that courts may not award visitation "unless a parent has de-

nied (or unreasonably denied) visitation to the concerned third party." *Troxel*, 530 U.S. at 71, 120 S.Ct. 2054. This is not surprising, for the effect of this language is to accord the decision of the parents the kind of rebuttable presumption of validity that *Troxel* suggests is appropriate. It places on the grandparents an onerous but appropriate burden in light of a parent's fundamental right to make decisions relating to the care and custody of a child. *Troxel*, 530 U.S. at 66, 120 S.Ct. 2054.[5]

Finally, the Missouri statute, unlike the Washington statute, does not simply leave the best interests issue to the unfettered discretion of the trial judge. Rather, it provides several procedural safeguards that assist the judge in making the best interests determination, including providing for a home study, for consultation with the child regarding his or her wishes, and for appointment of a guardian ad litem to participate in proceedings "as if such guardian ad litem were a party." Sec. 452.402.2–.5; *Petifurd v. Petifurd*, 22 S.W.3d 703, 705 (Mo.App. W.D.1999). These features of Missouri's statute assist the court in determining whether the parents' decisions as to visitation have been shown to be unreasonable and avoid having the judge base an order on "mere disagreement" such as occurred in *Troxel*. See *Troxel*, 530 U.S. at 68, 120 S.Ct. 2054.

■ Parents argue that because *Troxel* states that fundamental rights such as the interests of parents in the care, custody

---

**5.** The Court cited the following: "See, *e.g.,* Miss.Code Ann. § 93–16–3(2)(a) (1994) (court must find that "the parent or custodian of the child unreasonably denied the grandparent visitation rights with the child"); Ore.Rev. Stat. § 109.121(1)(a)(B) (1997) (court may award visitation if the "custodian of the child has denied the grandparent reasonable opportunity to visit the child"); R.I. Gen. Laws § 15–5–24.3(a)(2)(iii)(iv) (Supp.1999) (court must find that parents prevented grandparent

from visiting grandchild and that "there is no other way the petitioner is able to visit his or her grandchild without court intervention")." 530 U.S. at 71–72, 120 S.Ct. 2054. Missouri's statute is similar to those cited by the Court. Mississippi's statute has been held valid under *Troxel*. See *Stacy v. Ross*, 798 So.2d 1275, 1279 (Miss.2001). See also *Ring v. Jensen*, 172 Or.App. 624, 20 P.3d 205, 208 (Ct.App. 2001) (applying Oregon statute).

and control of their children require "heightened protection," it should be interpreted to require that this Court give strict scrutiny to non-parental visitation statutes such as the one here. But, only Justice Thomas, concurring in the result, said he would have applied a strict scrutiny standard to visitation statutes. *Troxel*, 530 U.S. at 80, 120 S.Ct. 2054 (Thomas, J., concurring). Although the majority did not articulate the specific standard of review it was applying, it did not apply the strict scrutiny standard advocated by Justice Thomas. Instead, after identifying the kinds of factors that led it to invalidate the application of the Washington statute to the facts before it, the Court decided to leave the determination of the propriety of particular statutes to a case-by-case analysis. *Troxel*, 530 U.S. at 73, 120 S.Ct. 2054.

Such a case-by-case approach is consistent with the fact that parental rights, although of prime importance, must be balanced with other rights, such as the best interests of the child and the state's interest in maintaining some contact between grandparents and grandchildren as well as in encouraging families to resolve disputes internally without a great amount of governmental interference. *Herndon*, 857 S.W.2d at 211. Statutes granting grandparents visitation also can be seen as a reflection of profound changes in the structure of American families. *Troxel*, 530 U.S. at 63–64, 120 S.Ct. 2054 (the nationwide enactment of nonparental visitation statutes is due, in part, to the fact that "demographic changes of the past century make it difficult to speak of an average American family."). The Supreme Court recognized states with statutes granting grandparents standing to petition

for visitation "have sought to ensure the welfare of children therein by protecting the relationships those children form with such third parties" and provide children with the "opportunity to benefit from relationships with statutorily specified persons—for example, their grandparents." *Id.* at 64, 120 S.Ct. 2054. *See also Troxel*, 530 U.S. at 86, 120 S.Ct. 2054 (Stevens, J., dissenting) ("There is at a minimum a third individual, whose interests are implicated in every case to which the statute applies—the child").

Missouri's legislature was mindful of all these varied interests of the parents, the state, and the children. Sections 452.402.1(3) and 452.402.2 are an attempt to adequately safeguard parents' interest by narrowing the circumstances in which non-parental visitation can be ordered in the case of an intact family to those very limited cases in which a grandparent can prove that the parents' decision was unreasonable.[6]

■ Parents claim that, even if strict scrutiny need not be applied to section 452.402 based on the fact that the court's order interferes with their parental decisions as to the care of their child, strict scrutiny nonetheless must be applied because they have also alleged that the children's visitation with Grandparents substantially burdens Parents' religious practices. More specifically, they allege that a principal reason they do not want Grandparents to visit with the children is that Grandparents do not share their religious beliefs and do not provide proper Christian role models. Therefore, they argue, this Court is required to subject

**6.** *See In the Interest of C.L.M.*, 625 S.W.2d 613, 617 (Mo. banc 1981) ("The general rule that natural parents have a primary right to the custody of their children is controlling when it is consistent with the welfare of those children.... When in conflict, however, the rule favoring parental custody is superseded by the concerns of the state for the child's welfare").

the statute to strict scrutiny because it impinges on their free exercise of religion. In support, Parents cite United States Supreme Court cases such as *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). *Yoder* held that where parental and religious interests are both implicated by a statute, such as the statute in that case requiring all children, including the Yoders' Amish children, to attend public high school, then in order to override the parental decision it must be found to jeopardize the health or safety of the child or "have a potential for significant social burdens." *Id.* at 233–34, 92 S.Ct. 1526.

Parents fail to cite any of the cases decided by the Supreme Court since *Yoder*, however, that substantially limit its impact on cases such as this one. Particularly relevant is *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), in which the Court stated:

> To make an individual's obligation to obey [generally applicable, religion neutral laws] contingent upon the law's coincidence with his religious beliefs, except where the State's interest is "compelling"—permitting him, by virtue of his beliefs, "to become a law unto himself," ...—contradicts both constitutional tradition and common sense.

*Id.* at 885, 110 S.Ct. 1595. For these reasons, the Court concluded that generally applicable, religion neutral laws need not be justified by a compelling government interest. *Id.* at 886 n. 3, 110 S.Ct. 1595. "The right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Id.* at 879, 110 S.Ct. 1595.

■ While Congress attempted to limit the application of *Smith* by passing the Religious Freedom Restoration Act, 42 U.S.C. sec.2000bb *et seq.* (1993), the latter was invalidated in *City of Boerne v. Flores*, 521 U.S. 507, 529–533, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). As a result, the rule stated in *Smith* governs here: states need not show a compelling state interest in order to apply neutral, generally applicable laws, even if they have a collateral affect on religious practices. *Flores*, 521 U.S. at 513–14, 117 S.Ct. 2157. A law is neutral if it does not discriminate on its face, that is, if it does not refer "to a religious practice without a secular meaning discernible from the language or context." *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 533, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993).

Section 452.402 meets this test. The language of the section's text in no way mentions or alludes to religion. Nor has a showing been made that the statute, by any means, "masks" governmental hostility towards religion, such as by legislative historical records suggesting it was enacted with religious overtones. Moreover, any effect of the statute on Parents' religious practices is necessarily minimal, as the court permitted only two hours of visitation per week, with one or both Parents present, and specifically directed that the visitation could not be scheduled during religious services. The order does not substantially intrude on Parents' religious practices, and strict scrutiny is not required on that basis. Since, for the reasons already noted, the intrusion on parents' rights to provide care for their children is also insubstantial, requiring less than strict scrutiny, there is no logical reason to require strict scrutiny when both religious and parental control issues are considered together. *See Knight v. Connecticut Dept. of Health*, 275 F.3d 156, 157 (2nd Cir.2001); *Kissinger v. Bd.*

of Trustees of Ohio State Univ., 5 F.3d 177, 180 (6th Cir.1993).

Applying these principles and the statutory factors, here, the Court finds the trial court did not err in ordering limited visitation. Parents have entirely prevented Grandparents from visiting and otherwise associating with grandchildren for over one year, unlike *Troxel*, in which mother's counsel conceded she consented to monthly visitation and only contested "how much and how it is going to be structured." 530 U.S. at 71, 120 S.Ct. 2054. The court specifically found this constituted an unreasonable denial of visitation for over 90 days, and, further, that "[i]t is in the best interest of the minor children that [Grandparents] be awarded reasonable visitation of their minor grandchildren." It crafted a visitation order that was very narrowly drawn to accomplish only a minimal intrusion on the parental rights of Parents, and which comported with the "occasional, temporary visitation" *Herndon* recognized comes within the constitutional safe-harbor of the Due Process Clause. 857 S.W.2d at 209.

While Parents suggest that the trial judge should have made more detailed findings as to the reasons for its decision, the statute does not so require and Parents did not timely request such findings, although entitled to do so under Rule 73.01. Grandparents did request three basic findings of fact as to the presence of the factors set out in the statute, and the court made each requested finding. The court's order here adequately demonstrated it complied with the statute in finding that Parents had unreasonably denied visitation before granting Grandparents limited visitation of two hours every 90 days.

For the reasons set out above, the judgment is affirmed.

LIMBAUGH, C.J., WHITE, WOLFF and BENTON, JJ., concur.

PRICE and TEITELMAN, JJ., not participating.