

# Missouri Court of Appeals

## Southern District

### Division One

LARRY PFEIFER,                          )
                                        )
    Petitioner-Respondent,         )
                                        )
v.                                      )   No. SD33462
                                        )
BENJAMIN GLENN DEAL,                    )   **Filed:  Sept. 2, 2015**
                                        )
    Respondent-Appellant.          )

### APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY

Honorable James Justus, Associate Circuit Judge

## REVERSED

Benjamin Glenn Deal ("Father") appeals the judgment that awarded grandparent visitation rights with his twelve-year-old daughter ("Child") to Larry Pfeifer, Child's maternal grandfather ("Grandfather"), under section 452.402.[1]  Father asserts the visitation award was erroneous because:  (I) the amount of visitation awarded was excessive as a matter of law, there were no required findings concerning Father, and the award was against the weight of the evidence; (II) the finding that visitation was in Child's best interest was insufficient for purposes

---

[1] Unless otherwise indicated, all statutory references are to RSMo Cum. Supp. 2013.  All rule references are to Missouri Court Rules (2015).

of section 452.402.2; and (III) Grandfather was not denied contact with Child for a period greater than ninety days as required by section 452.402.1(4).[2]

Father's meritorious third point requires us to reverse the judgment.

## Facts

Our recitation of the relevant facts is in accordance with the requirement that we view the evidence in the light most favorable to the judgment. *Stroh v. Stroh*, 454 S.W.3d 351, 355 (Mo. App. S.D. 2014). Father and Laura Jo Deal ("Mother") married in 1999, and Child was born in 2002. Father and Mother separated in October 2004, and they divorced in Arkansas six months later.[3] From age two to age nine, Child lived either with or near Grandfather in Arkansas. Father was living in Missouri. Grandfather was very involved in Child's life, and he either saw or talked to Child nearly every day. In 2009, Mother became ill and was frequently hospitalized. During that period of time -- from 2009 until July 2011 -- Grandfather was the person primarily responsible for Child's daily care. During that same period, Father's parenting time with Child consisted of visits every other weekend, some holidays, and summer visitation.

In July 2011, while Child was in Missouri for a summer visit with Father, Mother died. Child remained with Father, and on the day of Mother's funeral, Father filed the Arkansas equivalent of a Missouri motion to modify child custody. The Arkansas court dismissed Father's petition because it concluded that Mother's death effectively terminated the parties' Arkansas divorce case. *See Pfeifer v. Deal*, 2012 Ark. App. 190 (2012).

Child wanted to live with Grandfather in Arkansas, and Grandfather filed suit in Arkansas in August 2011, seeking either custody of Child or court-ordered visitation. Between

---

[2] Father's third point also contended that section 452.402.1(3) must be satisfied, but he then admitted that Grandfather satisfied the requirements of this section, stating in his point that "[C]hild resided with [Grandfather] for six (6) months out of the twenty-four (24) months prior to the filing of the petition[.]"

[3] The parties' marriage was dissolved in the state of Arkansas, and that state uses the term "divorce" instead of "dissolution."

August 2011 and February 2012, Father allowed Grandfather some visits, but Father was "dictating" the visits, and they did not occur on a regular schedule. On one occasion, Father took Child to Arkansas to visit Mother's grave, but he did not stop to allow Child to see Grandfather, who was only three miles away. Beginning in March 2012, Grandfather exercised court-ordered visitation with Child of approximately one weekend per month.

The Arkansas court subsequently dismissed Grandfather's custody claim on the ground that Arkansas domestic relations statutes did not provide for an award of custody to a non-parent. This decision was affirmed by the Arkansas Court of Appeals, *id.,* and the Arkansas Supreme Court denied review. The petition's alternative request for visitation remained pending in the Arkansas court for a period of time, *id*. at n.1, and in the summer of 2012, Child spent two weeks with Grandfather at his home.

The Arkansas court denied Grandfather's visitation claim in August 2012, and Father indicated that Grandfather would have to wait until October to see Child again. On September 19, 2012, Grandfather filed a petition for grandparent visitation in Missouri, citing section 452.402.1(2). While that litigation was pending, Grandfather saw Child in October 2012, and he saw her on subsequent occasions, at least some of which were ordered by the trial court. In his testimony, and on a calendar admitted as his Exhibit 7, Grandfather outlined the specific visits he had with Child between the date of Mother's death and the date of trial. Grandfather did not identify any span of time during that period in which he went more than 90 days without having a visit with Child.

Grandfather testified that he and Father would never be able to agree on reasonable visitation without court intervention. When Grandfather attempted to contact Father about visitation, Father usually ignored Grandfather's calls, and Father only occasionally responded to

Grandfather's emails.  In contrast, Grandfather's visits went "smoother" and regularly occurred when court-ordered.  At trial, Grandfather requested visitation of one weekend a month, "along with holidays and two or three weeks vacation in the summer."

At the conclusion of the trial, the trial court stated that it understood the emotions involved on both sides and why the case had to be tried.  And while the trial court indicated that it would not grant Father's request that Grandfather's petition be denied, it also would not award nearly as much visitation as Grandfather had requested.  The resulting judgment granted Grandfather visitation with Child one weekend every two months during the school year, two weeks during the summer, and three days over Thanksgiving and Christmas breaks.  The judgment also ordered that Child have "unfettered access to contact Grandfather" at least twice weekly.

This appeal timely followed the entry of the judgment, and because we find Father's third point dispositive, we take it up first.

## Analysis

*Point III – Interpretation of the Grandparent Visitation Statute*

Father's third point challenges the award of visitation on the ground that Grandfather did not satisfy section 452.402.1(4) in that he "was never denied visitation for a period of time exceeding ninety (90) days[,]" ("the 90-day provision").  As the record reveals that Grandfather sought and was granted visitation based exclusively on subpart (2) of section 452.402.1, we must determine whether Grandfather was also required to meet the requirements contained in subpart (4).  Such questions of statutory interpretation are an issue of law that we review *de novo*. ***Barker v. Barker***, 98 S.W.3d 532, 534 (Mo. banc 2003).

4

Instead of focusing on the language of section 452.402.1 in effect at the time of these proceedings, Father relies on *Tompkins v. Ford*, 135 S.W.3d 508, 510 (Mo. App. W.D. 2004), and *Blakely v. Blakely*, 83 S.W.3d 537, 544 (Mo. banc 2002), as supporting his claim that the 90-day provision is applicable. In *Tompkins*, the Western District considered section 452.402 as enacted in 2002 ("the 2002 version"). 135 S.W.3d at 507 and 510. That version did not include an "and" before the final subpart of section 452.402.1.[4] The Western District noted that the 2002 version of section 452.402.1(4) provided no specific procedure for seeking visitation, and it read the statute as a whole to ascertain that it meant to link that subpart with subpart (1), resulting in a

---

[4] Subsections 1 and 2 of the 2002 version stated:

1. The court may grant reasonable visitation rights to the grandparents of the child and issue any necessary orders to enforce the decree. The court may grant grandparent visitation when:

(1) The parents of the child have filed for a dissolution of their marriage. A grandparent shall have the right to intervene in any dissolution action solely on the issue of visitation rights. Grandparents shall also have the right to file a motion to modify the original decree of dissolution to seek visitation rights when such rights have been denied to them;

(2) One parent of the child is deceased and the surviving parent denies reasonable visitation rights to a parent of the deceased parent of the child;

(3) The child has resided in the grandparent's home for at least six months within the twenty-four month period immediately preceding the filing of the petition;

(4) A grandparent is unreasonably denied visitation with the child for a period exceeding ninety days. However, if the natural parents are legally married to each other and are living together with the child, a grandparent may not file for visitation pursuant to this subdivision; or

(5) The child is adopted by a stepparent, another grandparent or other blood relative.

2. The court shall determine if the visitation by the grandparent would be in the child's best interest or if it would endanger the child's physical health or impair the child's emotional development. Visitation may only be ordered when the court finds such visitation to be in the best interests of the child. However, when the parents of the child are legally married to each other and are living together with the child, it shall be a rebuttable presumption that such parents know what is in the best interest of the child. The court may order reasonable conditions or restrictions on grandparent visitation.

L.2002, S.B. No. 736, section A (editing marks adjusted.)

finding that the petitioning grandmother in that case was restricted to "a motion to modify the dissolution judgment" and had no basis in the statute to file her own independent action for grandparent visitation. 135 S.W.3d at 511. In doing so, the Western District pointed out that its holding was limited to situations in which there was an underlying dissolution judgment to modify. *Id.*

In *Blakely*, the version of section 452.402 enacted in 1998 ("the 1998 version") was at issue, and the paternal grandparents were granted visitation against the wishes of the married parents. 83 S.W.3d at 538-39. The parents argued that the 1998 version "violate[d] their constitutional right to raise their children free from unnecessary state interference[.]" *Id.* at 538. Our high court rejected that claim and affirmed the judgment. *Id.* In doing so, the Court highlighted the 1998 version's language requiring a denial of visitation for over 90 days as "the second important distinction between" Missouri's grandparent visitation statute and a Washington visitation statute the Supreme Court found to be unconstitutional as applied in *Troxel v Granville*, 530 U.S. 57, 68 (2000). *Id.* at 542 and 544. Other distinguishing elements of the Missouri statute highlighted in the opinion were: a denial of visitation must also be unreasonable, visitation rights were restricted to grandparents instead of requests by "*any* noncustodial person," and "procedural safeguards" were included in other provisions of the statute to "assist the judge in making the best interests determination[.]" *Id.* at 544-45.

Thus, while *Blakely* contains an important discussion of characteristics of a constitutional grandparent visitation statute, its reasoning did not hinge exclusively on the 90-day provision, and neither *Tompkins* nor *Blakely* addressed a maternal grandfather's request for grandchild visitation following the death of his daughter under the current version of section 452.402, which

was enacted in 2004 ("the 2004 version"). We therefore turn now to the language of the 2004 version.

> Section 452.402.1 currently provides:
>
> The court may grant reasonable visitation rights to the grandparents of the child and issue any necessary orders to enforce the decree. The court may grant grandparent visitation when:
>
> (1) The parents of the child have filed for a dissolution of their marriage. A grandparent shall have the right to intervene in any dissolution action solely on the issue of visitation rights. Grandparents shall also have the right to file a motion to modify the original decree of dissolution to seek visitation rights when visitation has been denied to them; *or*
>
> (2) One parent of the child is deceased and the surviving parent denies reasonable visitation to a parent of the deceased parent of the child; *or*
>
> (3) The child has resided in the grandparent's home for at least six months within the twenty-four month period immediately preceding the filing of the petition; *and*
>
> (4) A grandparent is unreasonably denied visitation with the child for a period exceeding ninety days. However, if the natural parents are legally married to each other and are living together with the child, a grandparent may not file for visitation pursuant to this subdivision.

(Emphasis added.)

The "primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *Parktown Imports, Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009). "We presume that the legislature intended that each word, clause, sentence, and provision of a statute have effect and should be given meaning[,]" *Bolen v. Orchard Farm R-V Sch. Dist.*, 291 S.W.3d 747, 751 (Mo. App. E.D. 2009), but we avoid meanings that "would defeat or frustrate the purpose of the enactment, or lead to an absurd result." *Hawkins v. Hawkins*, 511 S.W.2d 811, 812-13 (Mo. 1974) (in which the word "or" was construed as meaning "and" to avoid an absurd result). And, "[i]f possible, the statute should be

construed in a manner to harmonize any potential conflict between . . . two subsections." ***Hovis v. Daves***, 14 S.W.3d 593, 596 (Mo. banc 2000).

As is evident, section 452.402.1 of the 2004 version eliminates an "or" following subpart (4); eliminates what was previously subpart (5) (providing for visitation when "[t]he child is adopted by a stepparent, another grandparent or other blood relative); inserts an "or" between subparts (1) and (2); and inserts the "and" before subpart (4). L.2004, H.B. No. 1453, section A. Generally speaking, the word "or" is used as a disjunctive, whereas "and" is typically used as a conjunctive. ***801 Skinker Blvd. Corp. v. Director of Revenue***, 395 S.W.3d 1, 5 (Mo. banc 2013). As such, a plain-meaning interpretation of the 2004 version would require any grandparent seeking visitation to satisfy subpart (4) in addition to either subpart (1), subpart (2), or subpart (3). *Cf.* ***Matter of Adoption of E.N.C.***, 458 S.W.3d 387, 402 (Mo. App. E.D. 2014) (stating in *dicta* that "[s]ection 452.402 has been amended to provide for grandparent visitation when one of three circumstances is met first, plus an additional requirement that the grandparent be denied visitation unreasonably for a period exceeding ninety days").

Such an interpretation, however, raises some question about the ability of subpart (4) and section 452.402.2 to exist in harmony. *Cf.* ***Util. Serv. Co., v. Dep't of Labor & Indus. Relations***, 331 S.W.3d 654, 658 (Mo. banc 2011) ("No portion of a statute is read in isolation, but rather is read in context to the entire statute, harmonizing all provisions"). The second sentence of section 452.402.1(4) provides that "a grandparent may not file for visitation" where "the natural parents are legally married to each other and are living together with the child[.]" Section 452.402.2 provides:

> The court shall determine if the visitation by the grandparent would be in the child's best interest or if it would endanger the child's physical health or impair the child's emotional development. Visitation may only be ordered when the court finds such visitation to be in the best interests of the child. *However,*

8

*when the parents of the child are legally married to each other and are living together with the child, it shall be a rebuttable presumption that such parents know what is in the best interest of the child.* The court may order reasonable conditions or restrictions on grandparent visitation.

(Emphasis added).

Thus, if section 452.402.1(4) is read as a general precondition for grandparent visitation under each of subparts (1), (2), and (3), the above italicized provision in section 452.402.2, covering the same subject matter, at least at first glance, appears to be stripped of any applicability. But a deeper look yields an interpretation of subpart (4) and section 452.402.2 that would afford meaning to both. The legislature's use of the more restricted term "natural parents" when prohibiting the filing of a petition for grandparent visitation in subpart (4) and the use of the broader term "parent" in subpart (2) avoids an absurd result by permitting such a filing when the surviving parent is a legal parent (for example, via a step-parent adoption) but is not the natural parent of the child. We presume that this circumstance would be uncommon, but that does not render the interpretation absurd.

We acknowledge that our interpretation of the 2004 version narrows the circumstances under which a grandparent may seek visitation when compared to those permitted under previous versions of the statute. But we presume that a change in meaning is intended when a change in language occurs, and, in the absence of an absurd result, we must interpret the 2004 version in accordance with its plain meaning.

Point III is granted, and the judgment of the trial court is reversed.[5]

DON E. BURRELL, J. - OPINION AUTHOR

WILLIAM W. FRANCIS, JR., PJ - CONCURS

JEFFREY W. BATES, J. - CONCURS

---

[5] This disposition renders Father's remaining points moot, and they will not be addressed.