FOR APPELLANT: Joseph R. Dulle, 7733 Forsyth Blvd., Suite 500, Clayton, Missouri 63105.
FOR RESPONDENT: Melissa L. Moss, 7852 Big Bend Boulevard, St. Louis, Missouri 63119.
Lisa Van Amburg, Judge *694 Melissa Clay (Mother) appeals the circuit court's judgment granting grandparent visitation with her daughter (Child) to Child's paternal grandmother, Mary Lu Clay (Grandmother). We affirm.
Background
Child was born to Mother and Forrey Cordell Clay (Father) in July 2010. Grandmother, who lives in Wisconsin, attended Mother's baby shower and Child's birth in St. Louis. During the first 20 months of Child's life, Grandmother visited Child in St. Louis about nine times, and the couple took Child to visit Grandmother and Father's family in Wisconsin about four times. After a visit to St. Louis in April 2012, Grandmother's subsequent requests to visit Child were denied or ignored.
Father died in October 2015. Grandmother briefly spoke to Child at Father's funeral and later asked to visit Child, but Mother didn't respond. Grandmother filed a petition for grandparent visitation in December 2015, which was dismissed for failure to comply with § 452.402. Grandmother filed the petition in the instant action in March 2016 and proposed visitation schedule of:
• 2 supervised visits followed by two unsupervised visits;
• One weekend per month for 6 months in the St. Louis area from Saturday at 10:00 a.m. through Sunday at 4:00 p.m., outside Child's home;
• Thereafter, one weekend per month in or outside of the St. Louis area from Saturday at 10:00 a.m. through Sunday at 4:00 p.m.;
• One week each summer, which could be at Grandmother's residence in Wisconsin; and
• 96 consecutive hours during Child's Christmas break from school.
Mother opposed visitation, asserting that it was not in Child's best interest to be away from home and that Grandmother was a stranger to Child. The court appointed a guardian ad litem (GAL) to represent Child's interests in the case.
At a hearing on the petition, Grandmother testified that she works as a registered nurse in Wisconsin and has frequent contact with her other grandchildren. Grandmother testified that she wanted to be involved in Child's life, be a good role model, and offer child joy, a good relationship, contact with Father's family, and "fun times, educational times, and great memories of her dad." At the hearing, Mother described Child as a "fun, loving, kind, generous little girl." Mother testified that, at Father's funeral, Grandmother told Child that Grandmother was taking Mother to court to take Child away from Mother. Mother testified that Child was "scared" and that, when Mother told Child that Grandmother would like to visit with her, Child said "No. She's going to take me away and I'll never see you again." Grandmother testified that she said nothing of the sort, and she presented a witness who testified that she saw Grandmother and Child talking at the funeral, and that Child did not seem fearful. The GAL testified that she was not in a position to recommend grandparent visitation because she had no opportunity to see Grandmother and Child interact, and that Grandmother was essentially a stranger to Child.
The trial court granted Grandmother's petition for a visitation with child, ordering the following visitation schedule:
• Two supervised "reconciliation" visits at the DRS office;
• Two unsupervised weekend visits in St. Louis, the second of which would be an overnight visit in which Child *695 would be in Grandmother's custody overnight to occur within a month of the initial supervised visits at DRS;
• Weekend visits in the St. Louis area every three months during the school year from 5:00 p.m. on Friday to 4:00 p.m. on Sunday, including overnights;
• One week each summer outside of St. Louis; and
• Skype contact with Child once per month.
Mother appeals and asserts three points of error. In her first and second points, she claims that the trial court's findings that Grandmother was denied reasonable visitation and that grandparent visitation was in the best interests of Child are each unsupported by the record and contrary to Missouri law. For her third point, Mother claims that the trial court's visitation plan is excessive and thus contrary to Missouri law.
Standard of Review
Our standard of review requires us to affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Blakely v. Blakely , 83 S.W.3d 537, 540 (Mo. banc 2002). We defer to the trial court's findings of fact, but do not defer to the trial court on questions regarding the declaration or application of the law. Keeran v. Myers , 172 S.W.3d 466, 468 (Mo. App. S.D. 2005). We grant great deference to the trial court's ability to determine witness credibility; the trial court determines what portions of a witness's testimony to believe or disbelieve. Id.
Discussion
Section 452.402 governs grandparent visitation rights and provides in pertinent part:
1. The court may grant reasonable visitation rights to the grandparents of the child and issue any necessary orders to enforce the decree. The court may grant grandparent visitation when: ... (2) One parent of the child is deceased and the surviving parent denies reasonable visitation to a parent of the deceased parent of the child; ... and (4) A grandparent is unreasonably denied visitation with the child for a period exceeding ninety days. However, if the natural parents are legally married to each other and are living together with the child, a grandparent may not file for visitation pursuant to this subdivision.
2. The court shall determine if the visitation by the grandparent would be in the child's best interest or if it would endanger the child's physical health or impair the child's emotional development. Visitation may only be ordered when the court finds such visitation to be in the best interests of the child. However, when the parents of the child are legally married to each other and are living together with the child, it shall be a rebuttable presumption that such parents know what is in the best interest of the child. The court may order reasonable conditions or restrictions on grandparent visitation.
Denial of reasonable visitation (Point I)
For her first point, Mother claims that Grandmother was not unreasonably denied visitation for 90 days, as required by § 452.402.1(4). Mother contends that Grandmother's only request for visitation was the proposed plan she filed on June 14, 2016, which the trial court found unreasonable.
However, the record shows that Grandmother repeatedly asked to see Child after Father's funeral in November 2015 and more than 90 days before filing her petition *696 in the instant action. Grandmother sent multiple requests to Mother via text message:[1]
November 12, 2015: I would like to see you and [Child] sometime during Thanksgiving and the New Year. Please let me know what works for you. You are welcome to come up here for a few days or I could go down there for a few days ... Take care, hugs to you and [Child.] Love you both.
December 25, 2015: Merry Christmas to you and [Child.] ... Please let me know when I can come visit. When does [Child] go back to school?
July 16, 2016: Please wish [Child] a Happy 6th Birthday. Hopefully [sic] to see you both soon. Hugs to both, love you and [Child.]
Mother claims that only the November 12 message constituted a request and that it wasn't specific "as to time, place, or length of a visit." We disagree. Grandmother clearly expressed a desire to see or visit Child in each of the text messages. Grandmother offered to visit Child in St. Louis at Mother's convenience. These are reasonable requests that one would expect from a grandparent.
The trial court's finding that Grandmother was denied reasonable visitation for more than 90 days was supported by sufficient evidence, not against the weight of the evidence, and consistent with § 452.402. Point I is denied.
Best interests of Child (Point II)
Next, Mother claims that the trial court's finding that reasonable visitation with Grandmother is in the best interests of Child is not supported by substantial evidence and is against the weight of the evidence because Grandmother is essentially a "stranger" to Child. Mother also claims that the trial court improperly shifted the burden of proof to Mother to establish that it was not in Child's best interest to have visitation with Grandmother, contrary to § 452.402.
Put simply, Mother's point succumbs to this court's standard of review. We defer to the trial court's assessment of what serves the best interest of the child in matters pertaining to visitation rights, absent an abuse of discretion. Keeran v. Myers , 172 S.W.3d at 468. We will find an abuse of discretion only when the trial court's decision is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. Id. The record presents no such circumstances here.
In finding that grandparent visitation was in Child's best interests, the trial court relied on Herndon v. Tuhey , 857 S.W.2d 203 (Mo. 1993), and Blakely v. Blakely , 83 S.W.3d 537 (Mo. 2002), for the conclusion that the grandparent visitation statute reflects the state's interest in maintaining child-grandparent contact so as to provide the child with the opportunity to benefit from the child-grandparent relationship. In Herndon , the Missouri Supreme Court held that "If a grandparent is physically, mentally, and morally fit, then a grandchild will ordinarily benefit from contact with the grandparent." 857 S.W.2d at 210. The trial court noted that the relationship between Grandmother and Child was particularly important in this case because Father is deceased and "Grandmother provides an opportunity for Child to maintain *697 contact with" Father's side of Child's extended family.
As evidence that visitation is nonetheless not in Child's best interests, Mother cites the GAL's decision not to recommend visitation based on Grandmother being a stranger to Child, as well as Grandmother's testimony that she currently considers herself a stranger to Child. Although the GAL made no recommendation as to grandparent visitation based on the fact that Grandmother had not had significant contact since 2012, the trial court expressly addressed the matter, noting that the extended estrangement was wholly attributable to Mother. The trial court therefore determined that estrangement would only be a factor in determining the visitation plan, which the court tailored to allow Child to get to know Grandmother before beginning unsupervised, weekend-long visitation.
The trial court also noted that Mother never adequately explained her opposition to Grandmother visiting Child, and it found not credible Mother's allegation that Grandmother told Child she would take her away from Mother. Mother claims that these findings evince improper burden-shifting requiring Mother to prove that grandparent visitation is not in Child's best interests. We find this argument unpersuasive. The burden is on the grandparent to show that visitation is in the child's best interests, and here the trial court found that Grandmother met her burden. Specifically, the trial court cited Grandmother's fitness and capability, the importance of a relationship with Father's family, and the importance of the grandparent-grandchild relationship. The court's finding that Mother failed to explain why she opposes visitation does not shift the burden to Mother to show that visitation is not in Child's best interests. Rather, it was relevant to the statutorily required determination whether "the visitation by the grandparent ... would endanger the child's physical health or impair the child's emotional development." § 452.402.
The trial court's detailed and thorough findings regarding Child's best interests are supported by the record and show careful consideration; nothing in the court's judgment shocks our sense of justice. We see neither an abuse of discretion nor improper burden-shifting. Point II is denied.
Visitation plan (Point III)
Finally, Mother claims that the trial court's visitation plan is not narrowly drawn to be minimally intrusive on Mother's parental rights, contravening Missouri Supreme Court instruction to that effect in Herndon v. Tuhey and Blakely v. Blakely. 857 S.W.2d at 210-11 ; 83 S.W.3d at 548.
In support of her position, Mother cites Komosa v. Komosa , 939 S.W.2d 479, 483 (Mo. App. E.D. 1997), but the facts of that case are readily distinguishable. Komosa involved: full estrangement of the grandmother from the parent; grandmother's strained relationship with the 12-year-old child; an extensive visitation award to the grandmother (including two two-week periods each summer, seven holiday weekends every year and in odd years, the spring/Easter vacation of the child and four-day Thanksgiving weekend); and grandmother's insistence on exercising visitation even when it interfered with the child's activities. 939 S.W.2d 479. This court deemed that schedule excessive and remanded with directions that "visitation should not be granted more frequently than once every ninety days and is to occur in the area of the child's residence." Mother contends that Komosa establishes a bright line limit on the frequency of grandparent visitation. Such a reading is overbroad. "The particular facts of a case dictate the frequency with which visitation should be awarded."
*698 Ray v. Hannon , 14 S.W.3d 270, 275 (Mo. App. W.D. 2000),[2] accord Shemwell v. Arni , 223 S.W.3d 216, 218 (Mo. App. W.D. 2007) ("We reject such a broad reading of [ Komosa and Herndon ] and continue to employ a case-by-case determination when deciding whether a visitation schedule is excessive.").
Mother fails to explain how or why the visitation plan in this case more than minimally infringes on her parental relationship with Child. Instead, she merely points to less frequent visitation ordered in Komosa and upheld in Blakely and In re G.P.C. , 28 S.W.3d 357, 361 (Mo. App. E.D. 2000).[3] But, again, the circuit court has broad discretion in determining what limitations and terms to grandparent visitation are appropriate in the particular case. Simpson v. Buck , 971 S.W.2d 856, 859 (Mo. App. W.D. 1998). The question here is whether Grandmother's visitation schedule is excessive in the present circumstances-a determination we make on a case-by-case basis. Shemwell , 223 S.W.3d at 218.
Here, Grandmother had relatively frequent contact with Child during the first 20 months of her life, and the relationship between the two was loving and close. That contact was severed abruptly and further impeded by Father's subsequent death. Child was alienated from her Father's side of the family by no fault of their own. Except for the first four "phasing in" visits, the trial court's schedule only orders in-person visitation every 3 months. The monthly Skype session is minimally intrusive, as it could take place in Mother and Child's home, with no limitations on Mother's presence. While the summer visitation is in Wisconsin, that opportunity is important to allow Child to bond and integrate with her deceased Father's extended family, and Child will remain in the St. Louis area for all other visits. The trial court's schedule is not excessive or intrusive upon Mother's rights. Point III is denied.
Conclusion
The trial court's judgment is supported by sufficient evidence, is not against the weight of the evidence, and does not erroneously apply the law, so the judgment is hereby affirmed.
Colleen Dolan, P.J.
Mary K. Hoff, J., concur.

Grandmother also asked Father and Mother for visits prior to Father's death, to no avail. Grandmother filed an earlier petition for grandparent visitation in 2013 when Father and Mother separated briefly, but their reconciliation caused Grandmother's petition to be dismissed. "If the natural parents are legally married to each other and are living together with the child, a grandparent may not file for visitation." § 452.402.1(4).

Overturned on other grounds by Barker v. Barker , 98 S.W.3d 532 (Mo. banc 2003).

Overturned on other grounds by Barker v. Barker , 98 S.W.3d 532 (Mo. banc 2003).